Craig THOMAS, Karen Ann Thomas, Kaitlin Jade Thomas, and Caroline Angelene Thomas, Appellants,

v.

CNC INVESTMENTS, L.L.P, Appellee.

No. 01–05–00838–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 31, 2007.

Marshall Davis Brown Jr., Pavlas & Brown, P.C., Houston, TX, for Appellants.

Bernardo S. Garza, Callier & Garza, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and ALCALA.

## OPINION

TIM TAFT, Justice.

Appellants, Craig Thomas, Karen Ann Thomas, Kaitlin Jade Thomas, and Caroline Angelene Thomas, appeal from a take-nothing summary judgment rendered upon the motion of appellee, CNC Investments, L.L.P. ("CNC"). We determine whether the trial court erred by granting CNC's motion for summary judgment on appellants' causes of action against CNC for vicarious liability for assault, premises liability, and negligent hiring. We affirm the judgment of the trial court.

## Background

On July 29, 2002, Darrell Gordon, a Harris County Sheriff's deputy, was working an extra job at the Oaks of Woodforest apartment complex.[1] At about 12:15 a.m., Deputy Gordon requested assistance from Craig Thomas and Toby Kroger,[2] who were also Harris County Sheriff's deputies, to conduct a property inspection of the complex because Deputy Gordon was working alone that night. Deputies Thomas and Kroger were both off duty, working an extra job at another apartment complex in the area, and agreed to help Deputy Gordon patrol the Oaks of Woodforest apartment complex. While the deputies were patrolling the complex, a tenant gave them a tip about a stolen Dodge Durango in the apartment complex parking lot. During their patrol of the apartment complex, the deputies saw a Dodge Durango matching the informant's description of the stolen vehicle. Deputies Gordon and Kroger approached the driver of the Dodge Durango. The suspect started to drive away, and Deputies Gordon and Kroger shouted, "Sheriff's Department. Stop the vehicle. Stop the vehicle." The suspect revved the truck's engine and drove past Deputies Kroger and Gordon toward Deputy Thomas. Deputy Thomas turned his flashlight on himself "so that [the driver] could see that [Deputy Thomas] had a badge and 'Sheriff' across [his] chest." When the suspect continued to accelerate toward Deputy Thomas, all of the deputies fired shots at the driver. Deputy Thomas fired shots first, then Deputies Kroger and Gordon fired several shots. The suspect ran over Deputy Thomas. At some point while Deputy Gordon was shooting at the suspect, he accidentally shot Deputy Thomas in the leg. While the suspect was driving away, Deputy Kroger fired four more rounds, shooting the suspect in the back of the neck.

Appellants sued CNC, the company that paid Deputy Gordon to patrol the Oaks of Woodforest apartment complex. In their petition, appellants alleged that (1) CNC was vicariously liable for Deputy Gordon's assault of Deputy Thomas, i.e., Deputy Gordon's reckless discharge of his firearm, which injured Deputy Thomas; (2) CNC had a duty to use ordinary care to protect Deputy Thomas against an unreasonable and foreseeable risk of harm from the criminal acts of third parties on its premis-

---

1. Lieutenant Kenneth Melancon, the extra-jobs coordinator for the Harris County Sheriff's Department, had informed Deputy Gordon of that off-duty assignment. The Sheriff's Department approved and issued a permit for Deputy Gordon's extra-job assignment at the Oaks of Woodforest apartment complex.

2. Although in his deposition, this deputy's last name is spelled "Kroeger," appellants and CNC spell it "Kroger" in their petition, motions, and briefs.

es because CNC failed to have adequate security and to maintain the access gate at its apartment complex; and (3) CNC did not use ordinary care in determining whether Deputy Gordon was competent to be hired to patrol its premises.

In its answer, CNC entered a general denial and pleaded that (1) CNC was not vicariously liable because Deputy Gordon was acting as a public-safety officer when he accidentally shot Deputy Thomas, (2) CNC was not vicariously liable because Deputy Gordon was an independent contractor and not its employee, (3) Deputy Thomas was barred from recovering damages for injuries on its premises under the "firefighter's rule," (4) CNC was not liable for Deputy Thomas's injuries on its premises because his injuries were the cause of third parties beyond its control, and (5) Deputy Thomas's recovery should be reduced or barred under the doctrine of proportionate responsibility.

CNC moved for traditional summary judgment on appellants' assault cause of action on the grounds that (1) CNC was not vicariously liable because Deputy Gor-

don was acting as a public-safety officer when he shot Deputy Thomas and (2) CNC was not vicariously liable because Deputy Gordon's conduct was negligent, not intentional, and, therefore, CNC could not be held liable for its independent contractor's negligence.[3]

CNC moved for traditional summary judgment against appellants' premises-liability[4] cause of action on the grounds that (1) Deputy Thomas was barred from recovering for his injuries on its premises under the "firefighter's rule"; (2) CNC's failure to have an additional off-duty Sheriff's deputy on the premises was not the proximate cause of Deputy Thomas's injuries; (3) CNC's failure to maintain the access gate on the premises was not the proximate cause of Deputy Thomas's injuries; and (4) Deputy Thomas was a licensee who had actual knowledge of the danger of criminal activity at the complex, and, therefore, CNC did not have a duty to Deputy Thomas.

CNC moved for traditional summary judgment against appellants' negligent-hiring cause of action on the ground that

3. In the sections of CNC's motion for summary judgment entitled "Defendant cannot be held liable for alleged *negligent* acts of any peace officer in performance of his duties" and "Defendant cannot be held liable for the *negligent* acts of an independent contractor providing security services," CNC argued grounds for summary judgment on appellants' assault cause of action. (Emphasis added.) CNC addressed its grounds for summary judgment on appellants' assault cause of action only under these "negligence" headings. The trial court entered summary judgment on all of appellants' causes of actions.

Appellants did not object or specially except that the heading was confusing or that CNC's ground for summary judgment was unclear in the trial court. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993) (stating that exception is required should non-movant wish to complain on appeal that grounds relied on

by movant were unclear or ambiguous). For the reasons stated above, we look to the substance of CNC's argument in those sections of the motion for summary judgment as grounds for summary judgment on appellants' assault cause of action.

4. Appellants' live petition lists their cause of action as "negligence." In their petition, appellants cited to *Timberwalk Apartments, Partners, Inc. v. Cain* and alleged that CNC had breached its duty by failing to provide adequate security. *Id.*, 972 S.W.2d 749, 754 (Tex.1998) (holding that complaint that landowner failed to provide adequate security against criminal conduct is ordinarily premises-liability claim); *see also Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex.1997); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993). Accordingly, we interpret appellants' petition as having pleaded a premises-liability cause of action.

CNC did not breach any duty because it had used ordinary care in hiring Deputy Gordon to do security work because he was a Sheriff's deputy. CNC moved for no-evidence summary judgment against appellants' negligence-hiring cause of action on the ground that there was no evidence that Deputy Gordon was not qualified to do security work.

On August 5, 2005, the trial court granted CNC's motion for summary judgment. The trial court did not specify on what basis it rendered summary judgment. On August 22, 2005, the trial court signed a final judgment dismissing all of appellants' claims against CNC.

## Standard of Review and Burdens of Proof

■ The propriety of summary judgment is a question of law, and we thus review the trial court's ruling de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). In reviewing a summary judgment, evidence favorable to the non-movant is taken as true, and all reasonable inferences are indulged in the non-movant's favor. *Johnson County Sheriff's Posse v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996). When a summary-judgment order does not state the grounds upon which it was granted, the summary judgment may be affirmed on any of the movant's theories that has merit. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex.1996). Appellate courts should consider all grounds for summary judgment that the movant presented to the trial court when they are properly preserved for appeal. *Id.* at 625. Thus, the party appealing from such a judgment must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex. App.-Houston [1st Dist.] 1988, writ de-

nied); *McCrea v. Cubilla Condo. Corp.*, 685 S.W.2d 755, 757 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for traditional summary judgment must either disprove at least one element of each of the plaintiff's causes of action or conclusively establish each essential element of its affirmative defense, thereby rebutting the plaintiff's causes of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

■ A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the non-movant's claims on which the non-movant would have the burden of proof at trial. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the non-movant to raise a fact issue on the challenged elements. Tex.R. Civ. P. 166a(i). A no-evidence summary judgment will be sustained on appeal when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the non-movant to prove a vital fact, (3) the evidence offered by the non-movant to prove a vital fact is

no more than a scintilla, or (4) the non-movant's evidence conclusively establishes the opposite of a vital fact. *King Ranch,* 118 S.W.3d at 751.

## Summary Judgment

In seven issues, appellants argue that the trial court erred by granting CNC's motion for summary judgment on their causes of action against CNC for vicarious liability for assault, premises liability, and negligent hiring.

## A. Vicarious Liability for Assault

In issues one and two, appellants argue that the trial court erred by granting CNC's traditional motion for summary judgment on their assault cause of action against CNC. In issue one, appellants argue that the trial court erred by granting CNC's motion for traditional summary judgment on the ground that CNC was not vicariously liable because Deputy Gordon was acting as a public-safety officer when he shot Deputy Thomas. In issue two, appellants argue that the trial court erred by granting CNC's motion for traditional summary judgment on the ground that CNC was not vicariously liable because Deputy Gordon's conduct was negligent, not intentional, and, therefore, CNC could not be held liable for its independent contractor's negligence.

██ CNC alleged in its summary-judgment motion that it was entitled to traditional summary judgment on appellants' assault cause of action based on the theory of respondeat superior because Deputy Gordon was acting as a public-safety officer when Deputy Thomas was shot. To be entitled to traditional summary judgment, CNC had to prove that there was no issue of material fact that Deputy Gordon was performing a public duty, such as the enforcement of general laws. *See Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship,*

37 S.W.3d 145, 149 (Tex.App.-Austin 2001, no pet.).

██ Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of an employee. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541–42 (Tex.2002) (quoting *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998)); *Mansfield,* 37 S.W.3d at 149. When determining the status of an off-duty officer, we ask, "[I]n what capacity was the officer acting at the time he committed the acts for which the complaint is made?" *Blackwell v. Harris County,* 909 S.W.2d 135, 139 (Tex.App.-Houston [14th Dist.] 1995, writ denied). If a public-safety officer is performing a public duty, such as enforcement of general laws, he is acting in the course and scope of his employment as a police officer, and the private employer is not vicariously liable for the officer's actions, even if the employer may have directed those activities. *Mansfield,* 37 S.W.3d at 150; *Larkin v. Johnson,* 44 S.W.3d 188, 189–90 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *see also Blackwell,* 909 S.W.2d at 139. If an off-duty officer observes a crime, he becomes, as a matter of law, a public-safety officer. *Mansfield,* 37 S.W.3d at 150; *City of Dallas v. Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d 374, 377 (Tex.App.-Dallas 1994, no writ) (explaining that public-safety officer becomes government agent when he begins to function as one).

Appellants cite to *Bridges v. Robinson* to support their proposition that CNC may be liable for injuries that Deputy Thomas sustained; however, that case did not involve facts in which the off-duty officers had assumed, as a matter of law, the role of public-safety officers when the event in dispute occurred. *See id.,* 20 S.W.3d 104, 111 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (noting that if police officer is

"engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer," it then becomes jury question as to whether he was acting as public officer or as agent of private employer). In *Bridges,* a Dillard's customer argued with two customer service employees. During the argument, two salaried Dillard's security officers, who were also Harris County Sheriff's deputies, asked the customer to provide identification and escorted him to a back office. *See id.* at 108. The summary-judgment evidence showed that the officers hogtied the customer and rode and otherwise abused him until he died. *See id.* at 109–10. The *Bridges* court held that, considering the summary-judgment evidence, it was unclear if and when those officers assumed a role as public-safety officers; therefore, whether at material times those officers were acting in the course and scope of their employment remained a disputed fact issue. *See id.* at 110; *see also Blackwell,* 909 S.W.2d at 139.

In cases such as *Bridges,* the question of the officer's role is answered by the trier of fact. *See Rucker v. Barker,* 108 Tex. 280, 192 S.W. 528, 529 (Tex.1917) (stating that officer took no steps toward arrest until he consulted with his private employer); *Tex. & N.O.R. Co. v. Parsons,* 102 Tex. 157, 113 S.W. 914, 916 (Tex.1908) (stating that officer never showed intent to arrest trespassers, but intended only to put them off company's property). *Compare Larkin,* 44 S.W.3d at 190 (holding that trial court did not err in granting summary judgment in favor of store when deputy, who was private security guard for store, followed customer outside and at-tempted investigative stop for suspicion of disturbing peace because he was performing duties as public-safety officer; thus, store could not be vicariously liable for officer's actions as matter of law); *Mansfield,* 37 S.W.3d at 150–51 (holding that trial court did not err in granting summary judgment in favor of apartment complex when police officer, who was private security guard for apartment complex, discovered visitor exposing himself at complex because officer was performing duties as police officer at time that he detained visitor; thus, apartment complex could not be vicariously liable for officer's actions as matter of law); *Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d at 377 (holding that police officer, who was private security guard for store, ceased being independent contractor and became on-duty police officer when he saw crime being committed).

In this case, CNC's evidence proved that Deputy Gordon had assumed the role of a public-safety officer *prior* to shooting Deputy Thomas. Deputy Gordon Deputies Kroger and Thomas recalled that Deputy Gordon wore a "raid jacket" [5] and his badge and verbally identified himself as "Sheriff's Department" while attempting to detain the suspect of the suspected stolen vehicle. In criminal cases, these actions reflect that an officer is acting in his official capacity. *See Mansfield,* 37 S.W.3d at 149–50 (citing to *Hafdahl v. State,* 805 S.W.2d 396, 401 (Tex.Crim.App. 1990) ("[W]hen the police officer stopped at the scene of the accident and approached appellant shouting 'halt, halt, stop, police,' the officer was no longer off duty.") and *Selvage v. State,* 680 S.W.2d 17, 21 (Tex.Crim.App.1984) ("[The officer]

---

**5.** Deputy Thomas described Deputy Gordon's raid jacket in his deposition as follows: "I remember [Deputy Gordon's] raid jacket had the sheriff's patches. He had a patch where his—his badge patch and it had real large yellow letters that said 'Sheriff' or 'Sheriff's Department' on the front and back."

assumed the role of a peace officer when he removed his coat to identify himself as a Deputy Sheriff and approached appellant in an attempt to deter him from wrongdoing.")). Deputy Gordon was attempting to detain the suspect and to protect fellow officers from the suspect when Deputy Thomas was injured. Appellants produced no evidence raising a fact issue regarding CNC's vicarious liability for assault. The undisputed evidence showed that Deputy Gordon was performing his public duty by investigating the report of the stolen vehicle and attempting to detain the suspect. Accordingly, CNC cannot be held liable for Deputy Gordon's actions while he was attempting to apprehend the suspect and suspected stolen vehicle.

We hold that the trial court did not err in rendering traditional summary judgment for CNC on appellants' assault cause of action on the ground that CNC was not vicariously liable because Deputy Gordon was acting as a public-safety officer when Deputy Thomas was injured. *See Estate of Milo*, 909 S.W.2d at 510.

We overrule appellants' issue one.

We have already held that the trial court did not err in rendering traditional summary judgment for CNC on appellants' assault cause of action. Given our disposition on issue one, we need not reach appellants' issue two, in which appellant argues that the trial court erred in rendering traditional summary judgment for CNC on appellants' assault cause of action on the ground that CNC was not vicariously liable because Deputy Gordon's conduct was negligent, not intentional, and, therefore, CNC could not be held liable for its independent contractor's negligence. *See Cincinnati Life Ins. Co.*, 927 S.W.2d at 625–26 (holding that if summary-judgment order did not specify ground or grounds on which trial court relied for its ruling, appellate court must affirm summary judg-

ment if any theory that movant advanced has merit).

## B.  Premises Liability

In issues three, five, six, and seven, appellants argue that the trial court erred by granting CNC's motion for summary judgment on their premises-liability cause of action.

In issue three, appellants argue that the trial court erred by granting CNC's motion for summary judgment on the ground that Deputy Thomas was barred from recovering for his injuries on its premises under the "firefighter's rule." In issue five, appellants argue that the trial court erred by granting CNC's motion for summary judgment on the ground that CNC's failure to have an additional off-duty Sheriff's deputy on its premises was not the proximate cause of Deputy Thomas's injuries. In issue six, appellants argue that the trial court erred by granting CNC's motion for summary judgment on the ground that CNC's failure to maintain the access gate on the premises was not the proximate cause of Deputy Thomas's injuries. In issue seven, appellants argue that the trial court erred by granting CNC's motion for summary judgment on the ground that Deputy Thomas was a licensee who had actual knowledge of the criminal activity at the complex, and, therefore, CNC did not breach its duty to Deputy Thomas.

CNC alleged in its summary-judgment motion that it was entitled to traditional summary judgment on appellants' premises-liability cause of action on the ground that Deputy Thomas was barred from recovering for his injuries under the "firefighter's rule" because Deputy Thomas's injuries resulted from a risk inherent to a police officer detaining a suspect of the stolen vehicle. Appellants argued in their response to CNC's motion for summary

judgment that Deputy Thomas was excepted from the "firefighter's rule" because his injuries were caused by wanton, willful, or intentional behavior or acts of negligence occurring after Deputy Thomas had reached the scene. Appellants also argued that CNC owed Deputy Thomas a duty as an invitee, not a licensee, because Deputy Thomas was conducting business for the Oaks of Woodforest by assisting Deputy Gordon in his extra-job patrol on CNC's property.

### 1. Law

A negligence cause of action requires proof that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex.2002). The threshold issue in a negligence action is duty. *Greater Houston Transp. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The existence of a legal duty is a question of law unless the facts giving rise to the duty are disputed. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex.1991); *see Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998).

The decision to impose a legal duty involves complex considerations of public policy, including social, economic, and political questions and their application to the particular facts at hand. *Praesel*, 967 S.W.2d at 397; *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex.1993). In deciding whether to impose a duty on a particular defendant, courts weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the actor. *Praesel*, 967 S.W.2d at 397; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). Other proper considerations include whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm. *Praesel*, 967 S.W.2d at 397–98; *Graff v. Beard*, 858 S.W.2d at 920. Of these, the foremost consideration is the foreseeability of the risk. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987).

In cases involving public-safety officers, Texas courts typically have applied the duties owed to an ordinary licensee, including the duty to warn of known, dangerous conditions.[6] *See Campus Mgmt., Inc. v. Kimball*, 991 S.W.2d 948, 950–51 (Tex.App.-Fort Worth 1999, pet. denied). Under the common-law "firefighter's rule," firefighters and police officers are barred from recovering in premises-liability cases for injuries that result from risks inherent in responding to an emergency if the injuries are caused by only ordinary negligence. *See Peters v. Detsco, Inc.*, 820 S.W.2d 38, 40 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *see also Houston Belt & Terminal Ry. Co. v. O'Leary*, 136 S.W. 601, 605–06 (Tex.Civ. App.1911, writ ref'd); *Juhl v. Airington*, 936 S.W.2d 640, 647 (Tex.1996) (Gonzalez, J., concurring). The purpose of the rule is to limit the recovery of firefighters and police officers so that citizens will not be discouraged from relying on the skill, training, and expertise of these public servants. *Juhl*, 936 S.W.2d at 647. Two

---

6. In older cases, some courts also had found an additional duty—not to injure the public-safety officer through active negligence. *Houston Belt & Terminal Ry. Co. v. Johansen*, 107 Tex. 336, 179 S.W. 853, 853–54 (Tex. 1915); *Houston Belt & Terminal Ry. Co. v. O'Leary*, 136 S.W. 601, 605 (Tex.Civ.App. 1911, writ ref'd); *see Tex. Cities Gas Co. v. Dickens*, 140 Tex. 433, 168 S.W.2d 208, 211 (Tex.1943); *Campus Mgmt., Inc. v. Kimball*, 991 S.W.2d 948, 950–51 (Tex.App.-Fort Worth 1999, pet. denied).

exceptions to the firefighter's rule exist: when the licensor commits wanton, willful, or intentional behavior and when acts of negligence occur after the public-safety officer reaches the scene. *See Airington v. Juhl,* 883 S.W.2d 286, 291 (Tex.App.-El Paso 1994) (citing *Rosa v. Dunkin' Donuts of Passaic,* 122 N.J. 66, 583 A.2d 1129, 1133–34 (1991)), *rev'd on other grounds,* 936 S.W.2d 640 (Tex.1996).

■■■■■ The duty owed by a licensor to a licensee is not to injure him by willful conduct, by wanton conduct, or through gross negligence. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003) (citing *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974)). An exception to this general rule occurs when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor either to warn the licensee of the dangerous condition or to make the condition reasonably safe. *Id.* at 709. If the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists. *Id.* Further, a licensor owes no duty to warn a licensee or to make the condition reasonably safe if the evidence conclusively establishes that the licensee perceived the alleged dangerous condition. *Id.*

### 2. Analysis

To be entitled to traditional summary judgment, CNC had to prove that there was no issue of material fact that Deputy Thomas was acting as a public-safety officer when he was injured; Deputy Thomas's injuries resulted from risks inherent in responding to an emergency; CNC did not breach its duty to warn Deputy Thomas of known, dangerous conditions; and Deputy Thomas's injuries were not caused by either CNC's wanton, willful, or intentional behavior or CNC's acts of negli-

gence occurring after Deputy Thomas reached the scene. *See Juhl,* 936 S.W.2d at 647 (Gonzalez, J., concurring); *Houston Belt & Terminal Ry. Co.,* 136 S.W. at 605–06; *Peters,* 820 S.W.2d at 40; *see also Airington,* 883 S.W.2d at 291 (citing *Rosa,* 583 at 1133–34).

■■■■■ The evidence conclusively shows that Deputy Thomas was acting as a public-safety officer and that his risk of injury was inherent in responding to the emergency, such as a suspect's fleeing in a stolen vehicle and threatening to cause serious bodily injury to a police officer with the car. Deputy Thomas was shot by Deputy Gordon and run over by the suspect while investigating the report of a stolen vehicle and attempting to detain the suspect. Deputy Thomas was wearing departmental issued uniform pants, his raid vest that said "Sheriff" across the front and back, and his Sheriff's badge. While attempting to apprehend the suspect, Deputy Thomas "turned the flashlight on myself so that [the suspect] could see that I had a badge and 'Sheriff' across my chest." Deputy Thomas received workers' compensation benefits from the Harris County Sheriff's Department as a result of the injuries that he sustained.

Appellants argue in issue seven that CNC owed Deputy Thomas the duties owed to an invitee, not a licensee. Specifically, appellants argue that it is a "disputed fact issue" as to whether Deputy Thomas was an invitee or a licensee because Deputy Gordon requested that Deputies Thomas and Kroger assist him "in making rounds for the purpose of protecting CNC's property." We disagree. The above-referenced evidence conclusively shows that Deputy Thomas was acting as a public-safety officer and that his risk of injury was inherent in responding to the

emergency.[7] *Cf. Mansfield,* 37 S.W.3d at 150 (holding that if off-duty officer observes a crime, he becomes, as matter of law, on-duty officer); *Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d at 377 (explaining that public-safety officer becomes government agent when he begins to function as one). Accordingly, CNC owed Deputy Thomas the duties owed to a licensee. *See Campus Mgmt., Inc.,* 991 S.W.2d at 950–51 (recognizing that, in cases involving public-safety officers, Texas courts typically have applied duties owed to ordinary licensee, including duty to warn of known, dangerous conditions).

The evidence also conclusively shows that CNC did not breach its duty to warn Deputy Thomas of *known,* dangerous conditions and that Deputy Thomas's injuries were not caused by *CNC's* wanton, willful, or intentional behavior or *CNC's* acts of negligence occurring after he reached the scene, but, rather, by the criminal acts of a third party. *Cf. Timberwalk Apts. v. Partners Cain,* 972 S.W.2d 749, 756 (Tex.1998) (holding that, generally, owner has no legal duty to protect another from criminal acts of third party; however, owner owes duty to those who may be harmed by criminal acts on owner's premises when risk of criminal conduct is so great that it is both unreasonable and foreseeable); *Centeq Rlty., Inc. v. Siegler,* 899 S.W.2d 195, 197

(Tex.1995). Indeed, to hold CNC liable for Deputy Thomas's injuries resulting from risks inherent in responding to an emergency goes against the nature of the service provided by police officers, *i.e.,* police officers are employed to protect the public and to enforce laws. *See Farmer v. B & G Food Enters., Inc.,* 818 So.2d 1154, 1159 (Miss.2002) (recognizing that societal expectations supporting firefighter's rule turn on fact that public hires, trains, and compensates police officers to deal with dangerous, but inevitable, situations); *Kreski v. Modern Wholesale Elec. Supply Co.,* 429 Mich. 347, 415 N.W.2d 178, 187 (Mich. 1987); *see also Pinter v. Am. Family Mut. Ins. Co.,* 236 Wis.2d 137, 613 N.W.2d 110, 117 (Wis.2000) (stating, "Fundamentally, [the firefighter's rule] is an expression of public policy because it prohibits a [public-safety officer] from 'complaining about the negligence that creates the very need for his or her employment.' "). Deputy Thomas admitted, "I feel that all police work is unsafe." The undisputed evidence showed that Deputy Thomas was aware of the criminal activity at the Oaks of Woodforest apartment complex and had made arrests personally for aggravated assault with a deadly weapon on that property.

Based on the undisputed summary-judgment evidence, we hold that CNC owed Deputy Thomas the duties owed to a licen-

---

**7.** The summary-judgment evidence shows that the suspect was convicted of attempted *capital* murder and was sentenced to 55 years in prison for running over Deputy Thomas. *See* Tex Pen.Code Ann § 19.03(a)1 (Vernon Supp. 2006) (stating that a person commits capital murder if he commits murder as defined under section 19.02(b)(1) and the person murders a peace officer or fireman who is acting in lawful discharge of official duty and whom the person knows is peace officer or fireman). Therefore, to convict the suspect of the attempted capital murder of Deputy Thomas, the trier of fact had to find that Deputy Thomas was a "peace officer" as defined in the

Penal Code and the Code of Criminal Procedure. The Penal Code defines "peace officer" as a "person elected, employed, or appointed as a peace officer under article 2.12, Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other law." Tex. Pen.Code Ann. § 1.07(a)(36) (Vernon Supp. 2006). Article 2.12 of the Code of Criminal Procedure includes in its list of "peace officers": sheriffs, their deputies, and those reserve deputies who hold a permanent peace officer license under chapter 1701 of the Texas Occupations Code. Tex.Code Crim. Proc. Ann. art. 2.12(1) (Vernon Supp.2006).

see and that CNC was entitled to traditional summary judgment on appellants' premises-liability cause of action on the ground that Deputy Thomas was barred from recovering for his injuries on its premises under the firefighter's rule. *See Estate of Milo,* 909 S.W.2d at 510.

Accordingly, we overrule appellants' issues three and seven.

We have already held that the trial court did not err in rendering traditional summary judgment for CNC on appellants' premises-liability cause of action. Given our disposition on issues three and seven, we need not reach appellants' issue five, arguing that the trial court erred in rendering traditional summary judgment for CNC on appellants' premises-liability cause of action on the ground that CNC's failure to have an additional off-duty Sheriff's deputy on its premises was not the proximate cause of Deputy Thomas's injuries, or issue six, arguing that the trial court erred in rendering traditional summary judgment for CNC on appellants' premises-liability cause of action on the ground that CNC's failure to maintain the access gate on the premises was not the proximate cause of Deputy Thomas's injuries. *See Cincinnati Life Ins. Co.,* 927 S.W.2d at 625–26 (holding that if summary-judgment order did not specify ground or grounds on which trial court relied for its ruling, appellate court must affirm summary judgment if any theory that movant advanced has merit).

## C. Negligent Hiring

▮ In issue four, appellants argue that, with respect to their negligent-hiring cause of action, the trial court erred by granting CNC's motion for summary judgment on the ground that CNC did not breach any duty because it had used ordinary care in hiring Deputy Gordon to do security work.

CNC alleged in its summary-judgment motion that there was no evidence on the breach-of-duty element of appellants' negligent-hiring cause of action. *See* Tex.R. Civ. P. 166a(i). The burden then shifted to appellants to present "more than a scintilla of probative evidence to raise a genuine issue of material fact." *See Forbes Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex.2003). More than a scintilla of evidence exists when the evidence is enough to allow "reasonable and fair-minded people to differ in their conclusions." *Id.* Therefore, to defeat CNC's no-evidence motion for summary judgment, appellants had to present the court with some evidence on the breach-of-duty element on the negligent-hiring cause of action.

To prosecute their claim of negligent hiring successfully, appellants were required to show (1) that CNC owed a legal duty to protect Deputy Thomas from Deputy Gordon's action and (2) that Deputy Thomas sustained damages proximately caused by CNC's breach of that legal duty. *Houser v. Smith,* 968 S.W.2d 542, 544 (Tex.App.-Austin 1998, no pet.); *see also Peek v. Equip. Serv., Inc.,* 906 S.W.2d 529, 534 (Tex.App.-San Antonio 1995, no writ) (holding that basis of responsibility for negligent hiring is master's own negligence in hiring or retaining an incompetent servant whom the master knows or by exercise of reasonable care should have known was incompetent or unfit, thereby creating unreasonable risk of harm to others). The duty of the employer extends only to prevent the independent contractor from causing physical harm to a third party. *Verinakis v. Med. Profiles, Inc.,* 987 S.W.2d 90, 97–98 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

▮ The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,*

907 S.W.2d 472, 477 (Tex.1995). These elements cannot be established by mere conjecture, guess, or speculation. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex.1980). The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without which the harm would not have occurred. *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995); *see Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458–59 (Tex.1992); *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223 (Tex. 1988). Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *See Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968). Therefore, to prevent summary judgment on the asserted basis, Deputy Thomas had to produce more than a scintilla of evidence that CNC's actions in hiring Deputy Gordon were the cause in fact of his injuries and that Deputy Gordon's shooting Deputy Thomas and Deputy Thomas's resulting injuries were a foreseeable consequence of CNC's hiring of Deputy Gordon. *See Houser v. Smith*, 968 S.W.2d 542, 544 (Tex.App.-Austin 1998, no pet.).

Appellants contend that Deputy Gordon's recklessly firing a gun was foreseeable because CNC had hired Deputy Gordon to protect its property with deadly force and CNC did not make an inquiry into Deputy Gordon's qualifications or training. Appellants argue that Deputy Gordon was not "qualified" as a patrol deputy for the Sheriff's Department and that he was qualified only to work in the capacity of a jailer. The summary-judgment evidence showed that the Sheriff's Department's policy did not prohibit depu-

ties who were not patrol deputies from providing security at apartment complexes. Indeed, Lieutenant Kenneth Meloncon, the Sheriff's Department's extra-jobs coordinator, informed Deputy Gordon of the Oaks of Woodforest assignment, and the Sheriff's Department approved and issued a permit for Deputy Gordon's extra-job assignment at that apartment complex.

In addition, the summary-judgment evidence showed that Deputy Gordon had had the same Sheriff's academy training as a patrol officer. Deputy Gordon was instructed in academy training when to shoot tactically and when the use of deadly force was permissible. Appellants produced Deputy Thomas's deposition testimony, in which he testified that Deputy Gordon had had difficulty qualifying with his firearm. However, Deputy Thomas admitted that he had no personal knowledge of Deputy Gordon's firearm test or documentation showing that Deputy Gordon was not qualified to use a firearm.[8] This is nothing more than a scintilla of evidence that Deputy Gordon's recklessly firing a gun was foreseeable.

Even if CNC had inquired about Deputy Gordon's qualifications or training, appellants did not produce more than a scintilla of evidence of matters that would have caused CNC reasonably to conclude that Deputy Gordon was not qualified to provide security at its apartment complex. *See Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d at 478 (holding that if organization had investigated volunteer's criminal record resulting information would not have caused organization reasonably to anticipate his subsequent sexual assaults because volunteer's prior driving-while-intox-

---

**8.** When asked who had told him that Deputy Gordon had had difficulty qualifying with this firearm, Deputy Thomas responded, "I can't remember. It was just somebody—one of the officers came up and said, 'I was standing next to Gordon out at the range and, you know, he was just missing the whole target. He couldn't shoot at all, you know.' "

icated convictions did not indicate criminal conduct in any way akin to sexual assault of young boys).

Additionally, appellants' assertions that CNC's procedures were inadequate are nothing more than conclusory allegations unsupported by any evidence. Appellants presented no summary-judgment evidence to establish industry standards for hiring qualified security personnel. Appellants have produced no evidence that the qualifications advocated by appellants, *i.e.,* that CNC should have hired only patrol deputies as security personnel, are necessary, or that the failure to have such qualifications constitutes negligence. *See Castillo v. Gared, Inc.,* 1 S.W.3d 781, 786 (Tex. App.-Houston [1st Dist.] 1999, pet. denied).

In sum, appellants did not present more than a scintilla of probative evidence to raise a genuine issue of material fact. We hold that the trial court did not err by granting summary judgment on CNC's ground that there was no evidence on the breach-of-duty element of appellants' negligent-hiring cause of action.

We overrule appellants' issue four.

## Conclusion

We affirm the judgment of the trial court.