Opinion issued January 22, 2009 








                    




     





In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00645-CV




BRADLEY ALAN JACOBSON, Appellant

V.

AVI RON, TRUSTEE, Appellee




On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2005-76759A




MEMORANDUM OPINION
          Appellant, Bradley Alan Jacobson, fell and injured his knee while attempting
to halt the demolition of a building owned by appellee, Avi Ron. Ron had purchased
the vacant building and land underneath from the Jacobson Family Trust I (“the
Trust”), which had financed Ron’s purchase. While a portion of the note remained
outstanding, Ron elected to begin demolishing the existing building to clear space for
a new one. After approximately half of the building had been razed, Jacobson
discovered the demolition. Believing that Ron was destroying the collateral securing
the note, Jacobson went onto the property, at the direction of the trustee, to stop the
demolition crew. On his way to the bulldozer, Jacobson fell on some rubble and
injured his knee.
          Jacobson sued Ron under theories of premises liability and general negligence,
alleging that Ron (1) failed to maintain the property in a reasonably safe condition or
“to take adequate measures[,] such as fencing, to cordon off the area” and (2)
“negligently created a dangerous condition that placed property [sic] in immediate
risk of imminent harm and knew it was foreseeable that [Jacobson] would intervene
to rescue the property from destruction,” and was therefore liable under the “rescue
doctrine.” 
 
 
 
          Ron moved for summary judgment on the ground that the evidence
conclusively negated the duty, breach, and causation elements of Jacobson’s claims. 
The trial court granted summary judgment in favor of Ron. 
          In two issues, Jacobson contends that the trial court erred (1) by concluding
that Ron “is not liable on [Jacobson’s] premises liability claims” and (2) by
concluding that “the rescue doctrine is inapplicable to [Jacobson’s] general
negligence claim.”
          We affirm.
Background
          In May 2004, Ron purchased property and a vacant building located at 1600
North Main Street in Houston (“the property”) from the Trust, through its trustee,
Katherine Jacobson.


 The Trust financed the sale of the property to Ron under a
promissory note, and the note was secured by a deed of trust. According to Ron, he
agreed to pay the $325,000 purchase price on the basis of the value of the land. The
building, in his opinion, was valueless. In addition, it was populated by vagrants,
loaded with trash, and the street area surrounding it was flooded. Ron had received
numerous complaints from neighborhood citizens, and he considered the building to
be a liability. Ron hired Delaney Construction Company


 to demolish it. 
          On December 3, 2004, Jacobson was driving by the property and discovered 
the demolition in progress. He called the trustee and asked if Ron had paid off the
note or had obtained permission to demolish the building. According to Jacobson,
the trustee responded in the negative and instructed Jacobson to “go stop them.”           The facts surrounding the incident at issue are in dispute. According to
Jacobson, who testified by deposition, he parked his truck across the street from the
demolition site and attempted to get the attention of the bulldozer operator. Jacobson
said that, when he was unsuccessful, he entered the property “solely to rescue our
collateral property from further destruction.” On his way to the bulldozer, Jacobson
fell and twisted his knee while traversing some rubble. Jacobson was in considerable
pain but was able to get up and walk. He approached two of the men working at the
site and asked if they worked for Ron. They responded in the negative and stated that
their company had been contracted. Jacobson said, “Well, my Trust owns this
property and we’re carrying the note and y’all are not supposed to be demolishing this
building.” According to Jacobson, one of the workers called “his boss” and the “boss
told him to stop.” Then Jacobson left.
          Emeterio Alarcon, of Delaney, was the bulldozer operator on site on the day
of the incident. Alarcon testified by deposition that he was on the bulldozer pushing
debris into a pile when he saw Jacobson drive up. Alarcon testified that he saw
Jacobson get out of the truck and walk toward him waving his hands, and that
Alarcon shut off the bulldozer, got off, and walked toward Jacobson. Jacobson told
Alarcon to stop the demolition, and Alarcon directed Jacobson to talk to the job
supervisor, Rick Riley, who was at Papa’s Burgers—a nearby restaurant. Alarcon
said that he watched Jacobson walk back to his truck, drive over to Papa’s Burgers,
and talk with Riley. Alarcon testified that he never saw Jacobson fall. 
          In the days that followed the incident, the Trust notified Ron that it considered
the demolition of the vacant building to be a default under the terms of the promissory
note. On December 27, 2004, Ron made a partial pre-payment on the note in the
amount of $175,000, which apparently resolved the issue. 
          Subsequently, Jacobson sued Ron for his knee injury under theories of
premises liability and general negligence. Jacobson asserted that he had sustained a
“severe and permanent . . . knee injury resulting in surgery and subsequent
complications and hearing loss” which were caused “by falling rubble from the
structure.” Specifically, Jacobson alleged that Ron (1) failed to maintain the property
in a reasonably safe condition or “to take adequate measures[,] such as fencing, to
cordon off the area” and is “responsible for the acts of its agents, representatives,
and/or employees” and (2) “negligently created a dangerous condition that placed
property in immediate risk of imminent harm and knew it was foreseeable that
[Jacobson] would intervene to rescue the property from destruction,” and was
therefore “liable under the ‘rescue doctrine.’”
           Ron moved for summary judgment on the ground that the evidence
conclusively negated the duty, breach, and causation elements of Ron’s claims. Ron
contended that he did not breach any duty in maintaining the property that caused
Jacobson’s injury and that the “rescue doctrine” did not apply to the “rescue” of a
building. Ron further asserted that he was not liable for any act of Delaney, who was
an independent contractor. To his motion, Ron appended, as his evidence, the
promissory note and deed of trust, his own deposition testimony, as well as excerpts
of the deposition testimony of Jacobson and Alarcon.
          In his response to the motion for summary judgment, Jacobson maintained that
Ron exercised control over the demolition contractor, Delaney, and failed to ensure
that signs were posted or fencing was erected to warn “citizens” and keep them away
from the dangerous condition thereon and that the rescue doctrine was applicable
because “[h]e was confronted with circumstances in which immediate action was
necessary to save the building which was in imminent peril.” To his response,
Jacobson appended the papers concerning the sale of the property, the partial payment
agreement, and excerpts of the deposition testimony of Ron; Jacobson; Katherine, the
trustee; and Caspar Canill and Robert Delaney of Delaney Construction.
          On May 19, 2008, the trial court granted summary judgment in favor of Ron 
with respect to [Jacobson’s] claims that [Ron] (1) “is responsible for act
[sic] or acts of its agents, representatives, and/or employees,” (2)
violated the duty owed to [Jacobson] by “failing to maintain the property
in a reasonably safe condition,” (3) “knowingly violated the terms of the
deed of trust by destroying the structure on the property,” and (4) should
be held liable under the rescue doctrine.
 
This appeal ensued.Summary Judgment
          Jacobson contends that the trial court erred by granting summary judgment in
favor of Ron (1) by concluding that Ron “is not liable on [Jacobson’s] premises
liability claims” and (2) by concluding that “the rescue doctrine is inapplicable to
[Jacobson’s] general negligence claim.”
A.      Standard of Review
          We review a trial court’s ruling on a motion for summary judgment de novo.
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). A summary
judgment under Rule of Civil Procedure 166a(c) is properly granted only when a
movant establishes that there are no genuine issues of material fact and that he is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999). A defendant
moving for summary judgment must either (1) disprove at least one element of the
plaintiff’s cause of action or (2) plead and conclusively establish each essential
element of an affirmative defense to rebut the plaintiff’s cause. Cathey v. Booth, 900
S.W.2d 339, 341 (Tex. 1995). 
          First, the movant must conclusively establish its right to judgment as a matter
of law. See Rhone-Poulenc v. Steel, 997 S.W.2d 217, 222–23 (Tex. 1999). A matter
is conclusively established if reasonable people could not differ as to the conclusion
to be drawn from the evidence. City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex.
2005). 
          Then, if the movant conclusively establishes its right to judgment, the burden
shifts to the non-movant to respond with evidence raising a genuine issue of material
fact that would preclude summary judgment. Steel, 997 S.W.2d at 222–23
(explaining that non-movant has no burden to respond to summary judgment motion
unless movant conclusively establishes its cause of action or defense). In deciding
whether there is a disputed material fact precluding summary judgment, evidence
favorable to the non-movant will be taken as true, every reasonable inference must
be indulged in favor of the non-movant, and any doubts must be resolved in favor of
the non-movant. Dorsett, 164 S.W.3d at 661.
B.      Analysis 
          1.       Premises Liability
          In his first issue, Jacobson contends that the trial court erred by concluding that 
Ron “is not liable on [Jacobson’s] premises liability claims.”
          By his petition, Jacobson asserted that Ron “failed to maintain the property in
a reasonably safe condition or “to take adequate measures[,] such as fencing, to
cordon off the area” and is “responsible for the acts of its agents, representatives,
and/or employees,” referring to Delaney. 
          To prevail on a negligence cause of action, a plaintiff must show proof of (1)
a legal duty owed by one party to another, (2) a breach of that duty, and (3) damages
proximately caused by that breach. Kroger Co. v. Elwood, 197 S.W.3d 793, 794
(Tex. 2006). “Whether a duty exists is a threshold inquiry and a question of law;
liability cannot be imposed if no duty exists.” Id. By his motion for summary
judgment, Ron challenged the duty and breach elements of Jacobson’s premises
liability claim.
          Premises liability is a special form of negligence in which the duty owed to the
plaintiff depends upon his status as an invitee, licensee, or trespasser on the premises.
See Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005). An entrant’s
status depends on his purpose in coming on to the property. Motel 6 G.P., Inc. v.
Lopez, 929 S.W.2d 1, 3 (Tex. 1996). 
          An invitee is someone who enters the premises “with the owner’s knowledge
and for the mutual benefit of both.” Rosas v. Buddies Food Store, 518 S.W.2d 534,
536 (Tex. 1975). A licensee “is a person who goes on the premises of another merely
by permission, express or implied, and not by any express or implied invitation.”
Texas Louisiana Power Co. v. Webster, 91 S.W.2d 302, 306 (Tex. 1936); Smith v.
Andrews, 832 S.W.2d 395, 397 (Tex. App.—Fort Worth 1992, writ denied). A
licensee’s presence on the premises is for his own convenience or on business for
someone other than the owner. Smith, 832 S.W.2d at 397. A trespasser is someone
who enters the property without lawful right or the consent of the possessor, merely
for the trespasser’s own purposes. Weaver v. KFC Mgmt., Inc., 750 S.W.2d 24, 26
(Tex. App.—Dallas 1988, writ denied).
          Here, the record shows that Jacobson entered the property at the direction of
the trustee, who held Ron’s note, and “on business for someone other than the
possessor,” namely, the trustee. Hence, Jacobson was a licensee.



          The duty owed by the licensor to a licensee is not to injure the licensee
willfully, wantonly, or through gross negligence, or, in cases in which the owner or
occupier has actual knowledge of a dangerous condition unknown to the licensee, to
warn of or make safe the dangerous condition. Wal-Mart Stores, Inc. v. Miller, 102
S.W.3d 706, 709 (Tex. 2003). To prevail on his premises liability suit as a licensee,
Jacobson must also show that (1) Ron was in control of the premises


; (2) a condition
on the premises posed an unreasonable risk of harm; (3) Ron had actual knowledge
of the danger; (4) Jacobson did not have actual knowledge of the danger; (5) Ron
breached its duty of ordinary care by both failing to make the condition reasonably
safe and failing to adequately warn Jacobson; and (6) Ron’s breach proximately
caused Jacobson’s injury. See Miller, 102 S.W.3d at 709; County of Cameron v.
Brown, 80 S.W.3d 549, 554 (Tex. 2002); Palais Royal, Inc. v. Gunnels, 976 S.W.2d
837, 842 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d by agr.).
          Hence, as part of his burden, Jacobson must establish that he did not have
actual knowledge of the condition on the premises that posed an unreasonable risk
of harm. See Miller, 102 S.W.3d at 709; Thomas v. CNC Invs., L.L.P., 234 S.W.3d
111, 121 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When the licensor has
knowledge of a dangerous condition and the licensee does not, a duty is owed on the
part of the licensor either to warn the licensee of the dangerous condition or to make
the condition reasonably safe. See Miller, 102 S.W.3d at 709; Thomas, 234 S.W.3d
at 121. If the licensee has the same knowledge about the dangerous condition as the
licensor, then no duty to the licensee exists. Miller, 102 S.W.3d at 709; Thomas, 234
S.W.3d at 121. A licensor owes no duty to warn a licensee or to make a condition
reasonably safe if the evidence conclusively establishes that the licensee perceived
the alleged dangerous condition. Miller, 102 S.W.3d at 709. A licensee has actual
knowledge of the condition if the condition was perceptible to him or if he could infer
its existence from the facts within his present or past knowledge. Id.
          Here, the evidence shows that, by deposition, Jacobson testified that he was
driving by the property and saw that demolition was occurring on the property. 
Depositions are proper summary judgment evidence when referred to or incorporated
into a motion for summary judgment. See Rangel v. Lapin, 177 S.W.3d 17, 21 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied). At the direction of the trustee, Jacobson
attempted to stop the demolition. He parked his truck and got out and attempted to
get the attention of the bulldozer operator. When he was unsuccessful, Jacobson
decided to enter the property and try to approach the bulldozer. Jacobson testified
that he could see that there was rubble on the ground and that “it was not level.” 
There was another worker in the area sweeping up the rubble. Jacobson testified that
he was wearing dress shoes and that, while traversing the rubble on his way to the
bulldozer, he fell and injured his knee. 
          This evidence demonstrates that Jacobson had actual knowledge of the rubble
that he claims created the risk of harm and caused his injury. See Miller, 102 S.W.3d
at 709. Thus, the rubble was not a hidden danger. See Gonzalez v. Broussard, 274
S.W.2d 737, 738–39 (Tex. Civ. App.—San Antonio 1954, writ ref’d n.r.e.)
(concluding that testimony established that child knew about rocks on playground and
that he might slip and stumble, and that licensor owed no duty to warn or make
condition reasonably safe). Therefore, Ron had no duty to warn Jacobson of the
rubble or to make the area reasonably safe. See Miller, 102 S.W.3d at 709; Thomas,
234 S.W.3d at 121. 
          We conclude that, as a matter of law, Ron has met his burden to disprove at
least one element of Jacobson’s premises liability cause of action, namely, duty. See
Cathey, 900 S.W.2d at 341. The rendition of summary judgment was proper on the
ground that Ron did not breach a duty owed to Jacobson by “failing to maintain the
property in a reasonably safe condition” or “to take adequate measures[,] such as
fencing, to cordon off the area” or through any “acts of its agents, representatives,
and/or employees” in that regard. See Tex. R. Civ. P. 166a(c); KPMG Peat Marwick,
988 S.W.2d at 748.
          Accordingly, we overrule Jacobson’s first issue.
          2.       Rescue Doctrine 
          In his second issue, Jacobson contends that the trial court erred by concluding
that “the rescue doctrine is inapplicable to [Jacobson’s] general negligence claim.”


 
          The rescue doctrine imposes liability for a rescuer’s injuries when a defendant
negligently creates a situation that necessitates a rescue effort, and the rescuer’s
subsequent injuries are reasonably foreseeable as a natural and probable result of such
negligence. Daigle v. Phillips Petroleum Co., 893 S.W.2d 121, 122 (Tex.
App.—Houston [1st Dist.] 1995, writ dism’d by agr.). To hold an actor liable for its
negligent actions, a plaintiff must show that the harm involved was foreseeable. See
El Chico Corp. v. Poole, 732 S.W.2d 306, 313 (Tex. 1987). “Foreseeability” goes to
the third element of negligence, that of causation, and means that “the actor as a
person of ordinary intelligence should have anticipated the dangers his negligent act
creates for others.” Id.
          Here, Jacobson asserted that Ron “negligently created a dangerous condition
that placed property in immediate risk of imminent harm and knew it was foreseeable
that [Jacobson] would intervene to rescue the property from destruction” and
therefore “is liable under the ‘rescue doctrine.’” In his motion for summary
judgment, Ron contended that there was no basis in governing authority for applying
the rescue doctrine in this case, that is, to the rescue of property. We agree.
          In his sole Texas case to support his contention, Jacobson directs us to
Snellenberger v. Rodriguez, in which the El Paso court of appeals determined that
there was no recovery under the rescue doctrine for a widow whose police-officer
husband responded to a traffic accident and died of a heart attack while controlling
the crowd. 711 S.W.2d 138 (Tex. App.—El Paso 1986) aff’d, 760 S.W.2d 237 (Tex.
1988). In dicta, the court stated, “It has been held that to warrant the application of
the rescue doctrine, it must appear by way of allegation or proof that some person’s
life or property was then imperiled . . . .” Id. at 140 (emphasis added). The court
neither applied this premise nor cited any authority. 
          The supreme court has stated, and this court has recognized, that the purpose
of the rescue doctrine is to “support[] the heroic acts of individuals who rush into
danger to rescue others from imminent peril.” Snellenberger. v. Rodriguez, 760
S.W.2d 237, 237 (Tex. 1988); Daigle, 893 S.W.2d at 122–23. Here, it is undisputed
that no other individual was in “imminent peril.” Rather, Jacobson asks this court to
extend the rescue doctrine to buildings, to allow him to recover for injuries he
sustained when, in an effort to protect another’s contract rights, he entered a
demolition site, during demolition, and undertook to cross fallen building materials
to stop a bulldozer. We can see no sound reason to extend the rescue doctrine on
these facts.
          Accordingly, we overrule Jacobson’s second issue.



 
 
 
ConclusionWe affirm the judgment of the trial court.




                                                             Laura Carter Higley 
                                                             Justice
Panel consists of Chief Justice Radack and Justices Higley and Nuchia.