Opinion issued August 5, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00404-CV

———————————

Christine Finger, Appellant

V.

Hugh M. Ray,
III and Weycer, Kaplan, 
Pulaski, and Zuber, P.C., Appellees



 



 

On Appeal from the 151st District Court

Harris County, Texas



Trial Court Case No. 2007-71210

 



 

DISSENTING OPINION

The
majority errs in holding that appellant, Christine Finger, needed expert
testimony to prove the causal connection between the alleged misrepresentations
made to her by appellee, Hugh M. Ray, III, and her loss of $23,500, the amount
she seeks in restitution for attorney’s fees that she paid to Ray and his law
firm based on the alleged misrepresentations. 
Finger is not seeking damages for what she would have recovered due to
Ray’s negligence in representing her.  Rather,
as she notes, “it is crystal clear that the economic damages sought by [her]
[are] in the nature of restitution for the loss of her fees paid to Ray and
appellee, Weycer,  Kaplan, Pulaski, and
Zuber, P.C. (collectively “Ray”), . . . 
because of intentional false representation[s] made to her by Ray . . .
.”  

I would hold that Finger’s claims
are independent of a claim for legal malpractice and require no expert
testimony to raise a fact issue on causation. 
The majority errs in holding to the contrary.  Accordingly, I dissent.

Background

Finger obtained a judgment against David Reitman for $29,495
in damages and $1,200 in attorney’s fees in settlement of a breach of contract
claim against him.  Reitman then filed
for bankruptcy protection.  Finger hired
Ray to represent her during the process of collecting her judgment from Reitman
and in any potential bankruptcy litigation. 


Finger hired Ray based upon his
“express representations . . . that he would collect [her] judgment through
state court collection methods that would also provide [her] with attorneys
fees and costs of pursuit and collection[;] . . . the judgment that [she]
possessed was based upon fraud by Mr. Reitman[;] . . . if Mr. Reitman filed
personal bankruptcy then he, Mr. Ray, would file an action in the bankruptcy
court to except [her] claim out of the bankruptcy[;] and . . . [Ray] would
further proceed with the collection outside of any bankruptcy proceeding.”  Ray did not file a “section 523 action” to
remove Reitman’s debt to Finger from discharge.[1]  Rather, he filed a “section 727 action” to
bar Reitman’s bankruptcy discharge.[2]  Ultimately, the bankruptcy court approved a
settlement between Finger and Reitman for $40,700.  Finger then paid $23,500 to Ray for fees and
expenses, and she retained $17,200 from the settlement.

Finger, in her original petition, sued Ray for legal
malpractice, breach of fiduciary duties, breach of contract, and violations of
the Texas Deceptive Trade Practices Act (“DTPA”),[3]
which she alleged were based on Ray’s false representations to her that he
would take certain steps to collect her judgment against Reitman.  Finger alleged that these representations
induced her to hire Ray and his firm, and Ray billed and collected excessive
and unreasonable attorney’s fees from her.   Finger sought as damages the attorney’s fees
and expenses that she had paid to Ray, $225,000 in mental anguish damages, an equitable
fee forfeiture, a declaration that Ray breached the employment contract, and
attorney’s fees.  However, in her second
amended petition, Finger dropped her legal malpractice and breach of contract
claims after Ray filed his summary judgment motion.

Standard of Review

To prevail
on a summary judgment motion, a movant has the burden of proving that he is
entitled to judgment as a matter of law and that there is no genuine issue of
material fact.  Tex. R. Civ. P. 166a(c); Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995).  When a defendant moves for summary judgment, he
must either (1) disprove at least one essential element of the plaintiff’s
cause of action or (2) plead and conclusively establish each essential element
of his affirmative defense, thereby defeating the plaintiff’s cause of action.  Cathey,
900 S.W.2d at 341; Yazdchi v. Bank One,
Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). 
A defendant moving for a no-evidence summary judgment must allege that
there is no evidence of an essential element of the non-movant’s cause of
action.  Tex. R. Civ. P. 166a(i); Fort
Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004).  The non-movant must then produce “more than a
scintilla of evidence” to create a genuine issue of material fact on the
challenged elements.  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 600 (Tex. 2004). When deciding whether there is a disputed, material fact
issue precluding summary judgment, evidence favorable to the non-movant will be
taken as true.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor
of the non-movant and any doubts must be resolved in her favor.  Id.
at 549.

Causation Evidence

In her sole issue, Finger argues that
the trial court erred in rendering summary judgment in favor of Ray because
Texas law does not require expert testimony regarding a causal connection
between an alleged misrepresentation and out-of-pocket damages for money paid
in reliance upon the misrepresentation. 
She asserts that her DTPA and breach of fiduciary duty claims are not
“fractures” of a professional negligence claim. 
Rather, they are separate and independent claims based not on Ray’s
legal representation of her but on his misrepresentations that induced her to
hire him.  In effect, she asserts that
she was induced into hiring Ray for services she did not want or need.

Finger’s Claims

Attorneys owe a duty to their clients
to act with ordinary care, and “[c]omplaints about an attorney’s care, skill,
or diligence in representing a client implicate this duty of ordinary care and
sound in negligence.”  Beck v. Law Offices of Edwin J. (Ted) Terry,
Jr., P.C., 284 S.W.3d 416, 426 (Tex. App.—Austin 2009, no pet.).  A lawyer “can commit professional negligence
by giving an erroneous legal opinion or erroneous advice, by delaying or
failing to handle a matter entrusted to the lawyer’s care, or by not using a
lawyer’s ordinary care in preparing, managing, and prosecuting a case.”  Murphy
v. Gruber, 241 S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied).  Such claims for negligence may not be
fractured into separate non-negligence claims, such as breach of fiduciary duty
or DTPA claims because “the real issue remains one of whether the professional
exercised that degree of care, skill, and diligence that professionals of
ordinary skill and knowledge commonly possess and exercise.”  Kimleco
Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 924 (Tex.
App.—Fort Worth 2002, pet. denied) (citing Averitt
v. PriceWaterhouseCoopers L.L.P., 89 S.W.3d 330, 334 (Tex. App.—Fort Worth
2002, no pet.)).

However, the rule against fracturing
professional negligence claims does not preclude a client from simultaneously
asserting both negligence and non-negligence claims that arise out of common
facts.  Beck, 284 S.W.3d at 427 (citing Deutsch
v. Hoover, Bax & Slovacek, L.L.P., 97 S.W.3d 179, 189 (Tex.
App.—Houston [14th Dist.] 2002, no pet.)). 
To do so, the client must “present a claim that goes beyond what
traditionally has been characterized as legal malpractice,” and not “merely
reassert the same claim for legal malpractice under an alternative label.”  Duerr v.
Brown, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Whether a claim is a claim for professional
negligence is a question of law, and we are not bound by the labels the parties
place on the claims.  Beck, 284 S.W.3d at 427–428.  Regardless of the pleaded theory, if the crux
of the complaint is that a plaintiff’s attorney did not provide adequate legal
representation, the claim is one for legal malpractice.  Kimleco
Petroleum, 91 S.W.3d at 924.  Courts
are to focus on whether “the facts that are the basis for an asserted cause of
action implicate only the lawyer’s duty of care or independently actionable
fiduciary, statutory, contractual, or other tort duties.”  Beck,
284 S.W.3d at 428; see also Deutsch,
97 S.W.3d at 189–90 (if client’s complaint more appropriately classified as
fraud, DTPA, breach of fiduciary duty, or breach of contract, then client can
assert claim other than professional negligence).  

DTPA Violations

In her second amended petition, Finger alleges that during
Ray’s representation of her, he “committed breaches of fiduciary duties and
violated [section] 17.46(b)(5)(7)(12) and (24) and [section] 17.50(a)(3)”
of the DTPA by knowingly and intentionally (1) falsely representing to Finger
that he would except her judgment against Reitman from Reitman’s bankruptcy; (2)
falsely representing to Finger that he would seize Reitman’s property
separately from the bankruptcy proceeding to satisfy the judgment; (3) falsely
representing to Finger that he would file a Section 523 action to except
Finger’s judgment from discharge; (4) failing to disclose that he would not
file an action to except Finger’s judgment from Reitman’s discharge to induce her
into employing Ray, which she would not have done if Ray had disclosed that he
would not file a Section 523 action; and (5) billing and collecting excessive
and unreasonable fees because his services were worthless and obtained under
false pretenses.  

In determining whether a claim is merely one for professional
negligence or one for DTPA violations, we consider the “difference between
negligent conduct and deceptive conduct.” 
Latham v. Castillo, 972 S.W.2d
66, 69 (Tex. 1998).  Finger’s allegations
against Ray go beyond mere negligence, and instead involve deception and
misrepresentations made to secure employment. 
See Trousdale v. Henry, 261
S.W.3d 221, 232 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); see also Tolpo v. DeCordova, 146 S.W.3d
678, 685 (Tex. App.—Beaumont 2004, no pet.) (per curiam) (plaintiff’s failure
to contend that defendant-attorney knowingly excluded required contract term or
affirmatively misrepresented effect of contract did not support independent DTPA
claim, separate from plaintiff’s legal malpractice claim).

In Aiken v. Hancock,
the San Antonio Court of Appeals distinguished between deceptive and negligent
conduct.  115 S.W.3d 26, 29 (Tex.
App.—San Antonio 2003, pet. denied).  The
plaintiff alleged that his attorney (1) falsely represented that he was
prepared to try the plaintiff’s case, (2) failed to reveal that he was not
prepared to try the case, (3) falsely represented that an expert witness was
prepared to testify, and (4) failed to reveal that the expert witness was not
so prepared.  Id.  The court concluded that
this conduct was “conceivably negligent,” but not deceptive, and therefore the
plaintiff’s allegations did not support an independent DTPA claim.  Id.  

Here, however, Finger alleges that, to induce her into
employing his firm, Ray willfully made misrepresentations to her regarding the
actions that he would take to collect her judgment against Reitman.  The gist of Finger’s complaints against Ray
is not that he gave her bad legal advice or did not adequately represent her,
but that he deceived her into unnecessarily hiring him.  See
Kimleco Petroleum, 91 S.W.3d at 924; Greathouse
v. McConnell, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet.
denied).  Finger has not alleged that Ray
negligently informed her that her judgment against Reitman could be excepted
from the bankruptcy discharge, but she instead alleges and presented some
evidence that Ray made affirmative misrepresentations and engaged in deceptive
conduct to induce Finger into hiring him.[4]  See
Latham, 972 S.W.2d at 69 (had plaintiffs alleged that defendant “negligently
failed to timely file their claim” and not that he had affirmatively
misrepresented that he had filed and was pursuing claim, then claim would
properly be one for legal malpractice).  

Ray argues that he cannot be held
liable for any representations he made based upon his “professional judgment”
because his conduct falls within the “professional services exemption” to the
DTPA.  The Texas Legislature has specifically
provided that the DTPA does not apply to “a claim for damages based upon the
rendering of professional service, the essence of which is the providing of
advice, judgment, opinion, or similar professional skill.”  Tex.
Bus. & Com. Code Ann. § 17.49(c) (Vernon Supp. 2009).  Ray, however, raised the professional
services exemption in his no-evidence motion for summary judgment, stating that
legal services fall within the exemption. 
No-evidence summary judgment is only appropriate for essential elements
of a claim or defense upon which the adverse party bears the burden of proof at
trial.  Tex.
R. Civ. P. 166a(i).  The
professional services exemption from DTPA liability “is properly characterized
as an affirmative defense that must be pleaded because it is a plea of
confession and avoidance.”  Head v. US Inspect DFW, Inc., 159 S.W.3d
731, 740 (Tex. App.—Fort Worth 2005, pet. denied); Cole v. Central Valley Chemicals, Inc., 9 S.W.3d 207, 210 (Tex.
App.—San Antonio 1999, pet. denied).  As
an affirmative defense, Ray bore the burden to prove that his services fell
within the section 17.49(c) exemption, and, thus, he could not move for
no-evidence summary judgment on this ground. 
Section 17.49(c) also includes several exceptions to the exemption,
three of which involve express misrepresentations of material facts and
unconscionable actions that cannot be characterized as advice, judgment or
opinion, and failure to disclose information in violation of section
17.46(b)(24).  See Tex. Bus. & Com.
Code Ann. § 17.49(c)(1)–(3). 
Because Ray did not establish as a matter of law that his alleged
misrepresentations did not fall within the exceptions to the professional
services exemption, he is not entitled to summary judgment on the basis of this
exemption.  See Gibson v. Ellis, 58 S.W.3d 818, 826 (Tex. App.—Dallas 2001, no
pet.) (where defendant did not address misrepresentations alleged in plaintiff’s
DTPA claim, defendant did not establish as matter of law that representations did
not fall within section 17.49(c) exceptions). 
I would, therefore, hold that Finger has sufficiently alleged a claim
for violations of the DTPA independent from a claim of legal malpractice.[5]

Breach of Fiduciary Duty

In addition to the duty to act with ordinary care, attorneys
also owe fiduciary duties to their clients. 
Willis v. Maverick, 760 S.W.2d
642, 645 (Tex. 1988).  The attorney-client
relationship “is one for the most abundant good faith, requiring absolute
perfect candor, openness and honesty, and the absence of any concealment or
deception.”  Goffney v. Rabson, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied).  In
representing a client, an attorney must “render a full and fair disclosure of
facts material to the client’s representation.” 
Beck, 284 S.W.3d at 429 (quoting
Willis, 760 S.W.2d at 645).  Thus, a professional negligence claim focuses
on “whether an attorney represented a client with the requisite level of
skill,” while a breach of fiduciary duty claim focuses on “whether an attorney
obtained an improper benefit from representing the client.”  Beck,
284 S.W.3d at 429 (quoting Murphy,
241 S.W.3d at 693).  A breach of
fiduciary duty “most often involves the attorney’s failure to disclose
conflicts of interest, failure to deliver funds belonging to the client,
placing personal interests over the client’s interests, improper use of client
confidences, taking advantage of the client’s trust, engaging in self-dealing,
and making misrepresentations.”  Goffney, 56 S.W.3d at 193.

In Goffney, the
plaintiff alleged that the defendant abandoned her at trial, did not properly
prepare for trial, and misled her into believing that the case had been
properly prepared.  The court held that the
plaintiff’s allegations did not “amount to [allegations of] self-dealing,
deception, or misrepresentations” sufficient to support a separate cause of
action for breach of fiduciary duty.”  Id. at 194.  In Beck,
the plaintiff contended that the law firm’s failure to disclose the attorney’s
substance abuse problems breached the attorneys’ fiduciary duties and resulted
in an improper benefit—the attorney’s fees paid by the plaintiff.  See
Beck, 284 S.W.3d at 431, 433.  The court
held that the firm’s expectation of receiving fees from their continued
representation of the plaintiff did not convert what was essentially a
professional negligence claim into a claim for breach of fiduciary duty because
the plaintiff “did not allege that the [firm’s] failure to disclose the
[attorney’s] ‘alcohol and substance abuse addictions’ had anything to do with
the pursuit of attorney’s fees or an improper benefit.”  Id.
at 434; see also Murphy, 241 S.W.3d
at 699 (holding that plaintiffs did not state independent claim for breach of
fiduciary duty when they did not allege that lawyers deceived them, pursued own
pecuniary interests, or obtained improper benefit by continuing to represent
both clients).  

In contrast, Finger alleges that Ray made affirmative
misrepresentations to her and engaged in deceptive conduct to induce her to
hire his firm.  Unlike in Beck, where the firm’s receipt of
attorney’s fees for an improper benefit was not the focus of the plaintiff’s
complaint, here, Ray’s receipt of attorney’s fees based on his
misrepresentation is the basis of Finger’s suit.  See
Beck, 284 S.W.3d at 433–34.  Finger’s
complaint is not ultimately about the quality of representation that she
received, but that Ray’s misrepresentations induced her to unnecessarily hire
an attorney, which she would not have done had Ray not made the
misrepresentations.  Accordingly, I would
hold that Finger has sufficiently alleged a claim for breach of fiduciary duty
independent from a claim of legal malpractice. 

 

Expert Testimony Not Required

Because Finger’s claims for DTPA violations and breach of
fiduciary duty are independent of any claims for legal malpractice, expert
testimony is not required to prove causation of her damages, an issue that is
within the common experience of lay persons. 


To prevail on a DTPA claim, a plaintiff must prove that a
defendant’s statutory violation is a producing cause of the injury.  Tex.
Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2009); Alexander v. Turtur & Assocs., Inc.,
146 S.W.3d 113, 117 (Tex. 2004); Hoover
v. Larkin, 196 S.W.3d 227, 232 (Tex. App.—Houston [1st Dist.] 2006, pet.
denied) (“A plaintiff may recover all damages, including attorney’s fees, that
are the result of the defendant’s wrongful acts, but the burden remains on the
plaintiff to demonstrate such causation.”). 
A plaintiff must establish that an “unbroken causal connection” exists
between the actionable misrepresentation and the plaintiff’s injury.  Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995).  

To prevail on a breach of fiduciary duty claim, a plaintiff
must prove that the defendant’s breach of his fiduciary duties proximately
caused the plaintiff’s damages.  Abetter Trucking Co. v. Arizpe, 113
S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Both proximate and producing cause encompass
causation in fact, which requires
proof that a defendant’s act or omission was a substantial factor in bringing
about the injury, without which the injury would not have occurred.  Prudential
Ins. Co. of Am. v. Jefferson Assocs., 896 S.W.2d 156, 161 (Tex. 1995); Thomas v. CNC Invs., L.L.P., 234 S.W.3d
111, 124 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  In addition to cause in fact, proximate cause
also requires foreseeability.  See Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 785 (Tex. 2001); Thomas,
234 S.W.3d at 124.

In a claim for professional negligence arising from prior
litigation, to establish causation, a plaintiff must prove a “suit within a
suit,” i.e., but for the attorney’s breach of his duty, the plaintiff would
have prevailed in the underlying case.  Hoover, 196 S.W.3d at 231.  The fact finder must have some basis for
understanding the causal link between the attorney’s negligence and the injury,
and although the client’s lay testimony may provide this link, in some cases
the “connection may be beyond the jury’s common understanding and require expert
testimony.”  Alexander, 146 S.W.3d at 119. 
However, as previously discussed, Finger’s claims against Ray are not
merely disguised professional negligence claims, but are independent claims for
breach of fiduciary duty and DTPA violations. 
Neither claim requires Finger to prove “suit within a suit”
causation.  Latham, 972 S.W.2d at 69.

In its summary judgment order, the
trial court acknowledged that, generally, expert testimony is not necessary to
prove causation for DTPA and breach of fiduciary duty claims.  The trial court then, however, ruled that
Finger did need expert testimony to create a fact issue on causation because
all of her claims are “essentially claims that but for the alleged
misrepresentations by [Ray] about proceeding under section 523 as opposed to
section 727 of the bankruptcy code, [Finger] would have simply filed a claim in
the bankruptcy court and settled her claim with the bankrupt debtor or
otherwise recovered more than she netted based upon [Ray’s] efforts.”  According to the trial court, Finger
“required a bankruptcy law expert to create a fact issue on her ability to
have, at a minimum, collected more than what she netted in this case had she
done as she claims she could have and merely ‘filed a claim.’”  If Finger had alleged that she could have
collected more than Ray negotiated, given that the bankruptcy judge must
approve all settlements of claims against the debtor, to raise a fact issue on
causation, Finger would indeed have needed testimony about what the bankruptcy
judge would do, which requires expert testimony.  See
Alexander, 146 S.W.3d at 119 (decision-maker bankruptcy judge did not
testify regarding how he might have ruled if case had been presented
differently, leaving jury without expert testimony explaining legal significance
of omitted evidence).  

Finger, however, did not allege that, had she not hired Ray,
she could have collected more than the $40,700 settlement Ray negotiated with
Reitman or would have netted more than $17,200 in a settlement with
Reitman.  Rather, Finger asserts that had
Ray not made affirmative misrepresentations, she would not have hired him at
all, and would not have incurred $23,500 in attorney’s fees.  Finger might not have reached a settlement
amount of $40,700 with Reitman without Ray’s assistance, but regardless of what
amount she would ultimately have recovered from Reitman, she would not have
expended $23,500 in attorney’s fees.

In support of her position, Finger relies on Streber v. Hunter, 221 F.3d 701, 726–27
(5th Cir. 2000) and Delp v. Douglas,
948 S.W.2d 483, 495–96 (Tex. App.—Fort Worth 1997), rev’d on other grounds, 987 S.W.2d 879 (Tex. 1999).  Ray contends that this case is factually
distinguishable from Streber and Delp.  He asserts that the plaintiffs in those cases were
the “decision-makers” whereas here, the “ultimate decision-maker” was the
bankruptcy judge, who would determine whether Finger was entitled to a greater
recovery than the one negotiated with Reitman by Ray.  He argues, thus, that expert testimony was
required to prove what the bankruptcy judge could or would do under the
particular facts.  See Streber, 221 F.3d at 726–27; Delp, 948 S.W.2d at 495–96.  

However, the Texas Supreme Court, in distinguishing both Streber and Delp from the facts before it in Alexander, noted that, in both cases, “because of [the plaintiffs’]
lawyers’ bad advice, [the plaintiffs] made the decision and took the actions
that resulted in their injuries.”  Alexander, 146 S.W.3d at 119.  On the other hand, the issue in Alexander involved whether a bankruptcy
judge would have decided the underlying case differently if another lawyer at
the firm had handled the adversary proceeding. 
See id. at 118–19.  Thus, the bankruptcy judge was the “decision
maker,” and the plaintiff had to produce expert testimony on how the judge
would have ruled had the case been tried with a different attorney.  Id.

Here, in contrast, Finger alleges
that in making affirmative misrepresentations about the recovery that could be
obtained and the procedures that Ray would use to obtain that recovery, Ray
induced Finger into hiring him and his firm and paying them $23,500 in
attorney’s fees.  Regardless of what
settlement amount the bankruptcy judge would have approved if Finger herself had
negotiated with Reitman, Finger asserts that she would not have hired Ray and
paid $23,500 in fees had the misrepresentations not been made.  On her own, Finger might have recovered the
same amount that Ray had negotiated, or even less, but Ray would not have obtained
her money in payment of his attorney’s fees. 
Based on Ray’s misrepresentations, Finger made the decision to hire him
instead of proceeding on her own to collect her judgment from Reitman, and this
caused her to incur $23,500 in attorney’s fees to Ray.  Like the plaintiffs in Streber and Delp, Finger
was the “key decision maker.”  

Because the causal link between Ray’s
alleged misrepresentations and Finger’s alleged injury, her payment of $23,500 to
Ray, is not beyond the common understanding of the jurors, Finger need not
produce expert testimony to raise a fact issue on causation in regard to her
DTPA and breach of fiduciary claims.  See Alexander, 146 S.W.3d at 119–20; Streber, 221 F.3d at 726–27; Delp, 948 S.W.2d at 495–96.  

Finger’s Lay Testimony

Finally, within her sole issue,
Finger further argues that the trial court erred in sustaining Ray’s objections
to her affidavit testimony, which created a material fact issue on the element
of causation.  Ray made five objections
to various statements in Finger’s affidavit.[6]  He objected on hearsay and speculation
grounds to Finger’s assertion that, upon Reitman’s bankruptcy, “[she] would
have simply filed [her] claim with the bankruptcy court and negotiated with Mr.
Reitman on the settlement that [she] knew he would make, based upon
conversations with him, and would not have paid Mr. Ray and his law firm from
[her] own funds the sum of $23,500.”  The
trial court sustained these objections.  Ray
also objected to Finger’s statement that she would have been able to achieve
the same settlement without paying $23,500 to Ray as speculative, conclusory,
hearsay, and not based on personal knowledge. 
He also asserted that Finger, in her affidavit, did not affirmatively
indicate that she is competent to testify on this matter.  The trial court also sustained these
objections.

Regardless, Ray only objected to
select statements made by Finger in her affidavit.  Ray did not object to Finger’s testimony that
he misrepresented the actions he would pursue in collecting her judgment
against Reitman or her testimony that, but for his express misrepresentations,
she would not have hired him and paid $23,500 in attorney’s fees.  Ray also did not object to Finger’s testimony that
his representations were “false, serious, and willfully made” or that, although
he could have “easily checked with the state court file to determine whether
[Finger] was eligible for an action to take [her] judgment out of personal
bankruptcy of Mr. Reitman,” he did not do so, “but instead made the representations
that caused [Finger] to pay him and his law firm $23,500.”  Even excluding Finger’s testimony on which the
trial court sustained Ray’s objections, the remainder of Finger’s testimony is
sufficient to raise a genuine issue of material fact on the question of
causation.


Conclusion

I would hold that Finger has,
independent of any claim for legal malpractice, alleged claims for breach of
fiduciary duty and under DTPA sections 17.46(b)(24) and 17.50(a)(3), which do
not require expert testimony on the issue of causation.  Accordingly, I would sustain Finger’s sole
issue and remand the case to the trial court.

 

 

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Hanks, and Bland.

Justice
Jennings dissenting.











[1]           See 11 U.S.C. § 523 (2006).

 





[2]           See 11 U.S.C. § 727 (2006).  

 





[3]           See
Tex. Bus. & Com. Code Ann. §§
17.46, 17.50 (Vernon Supp. 2009).





[4]
          In its order granting and
denying Ray’s summary judgment in part, the trial court found that “there is at
least a scintilla of evidence as to whether Defendants made a misrepresentation
to Plaintiff.”  Ray does not cross-appeal
this ruling.

 





[5]
          Finger alleges that Ray violated
five different sections of the DTPA, including section 17.46(b)(5), which
prohibits the representation of services as one quality when they are really of
another.  The Fourteenth Court of Appeals
has previously held that alleging a violation of this section of the DTPA is a
“recast claim for legal malpractice.”  See Goffney v. Rabson, 56 S.W.3d 186,
192 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  Sections 17.46(b)(7) and (12) prohibit
similar representations.  See Tex.
Bus. & Com. Code Ann. §§ 17.46(b)(7), (12).





[6]           Although
the trial court sustained four of Ray’s five objections, Finger only challenges
two of those rulings on appeal.