**Opinion issued September 23, 2016**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-14-00969-CV

————————————

**BRYAN BLACK, Appellant/Cross-Appellee**

**V.**

**SMITH PROTECTIVE SERVICES, INC., Appellee/Cross-Appellant**

On Appeal from the 189th District Court
Harris County, Texas
Trial Court Case No. 2012-56941

## MEMORANDUM OPINION

Appellant/Cross-Appellee, Bryan Black, challenges the trial court's rendition of summary judgment in favor of Appellee/Cross-Appellant, Smith Protective Services, Inc. ("Smith"), in Black's suit against Smith for negligent hiring, training, supervision, and retention. In his sole issue, Black contends that

the trial court erred in granting Smith summary judgment. In its sole cross-point, Smith contends that the trial court erred in denying its request for attorney's fees.[1]

We affirm in part and reverse and remand in part.

## Background

In his sixth amended petition, Black, a resident of The Oaks of Woodlake Townhomes ("The Oaks"), alleged that on March 6, 2012, Muhammad Zaffar, a Smith security guard attending the front entry gate of The Oaks, refused entry to one of Black's guests. Black noted that "[g]uests are routinely permitted entry once they are identified." When Black and a friend went to the security gate to ask Zaffar to allow the guest to enter, Zaffar "refused the request in a very rude fashion and called [Black's] friend an offensive name." Black and Zaffar then engaged in an argument, but had no physical contact. The "verbal confrontation ended while both [Black and Zaffar] were outside the guardhouse in plain sight of others [who] were coming and going." However, when Zaffar left work that day, he drove to a Houston Police Department ("HPD") substation and filed a criminal complaint, alleging that Black had "physically assaulted" him, threatened him, and "swung a baseball bat" at him.

Two days later, on March 8, 2012, when Black arrived home from work, law enforcement officers, in plain view of other residents, surrounded him in the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 42.001–.005 (Vernon 2015); TEX. R. CIV. P. 167.

parking lot of The Oaks and pointed a shotgun at his head. After the officers unsuccessfully searched Black's apartment for a bat, they arrested him for the felony offense of aggravated assault with a deadly weapon. Black complained that although a grand jury later declined to indict him, there still stands a public record of an arrest and charges made against him.

Black later learned that Zaffar had previously made similarly false accusations against other individuals at The Oaks. Specifically, a company, Forward Air, contacted Smith on February 11, 2012 to complain that after Zaffar had refused its employee entry to The Oaks, he reported to a Smith dispatcher that the employee had threatened to shoot him and he "might have to call police." Two weeks later, a resident of The Oaks filed with The Oaks's management a written complaint, asserting that Zaffar had falsely reported to a law enforcement officer that her son had threatened to shoot him. Black asserted that these incidents, because they had occurred so close together in time, put Smith on notice that Zaffar had exhibited "episodes of paranoia" and "resorted to calling police" whenever he was confronted or became angry.

Black further alleged that Smith had negligently hired, trained, supervised, and retained Zaffar. In regard to hiring Zaffar, Black asserted that Smith had failed to adhere to its own standards by not obtaining from Zaffar information about his five years of prior experience or seven years of job experience that Smith had

3

requested on its employment application. And Smith failed to check Zaffar's employment references and discover that his application contained inaccurate dates of employment according to Texas Department of Public Safety records.

In regard to training Zaffar, Black alleged that Smith did not instruct him "about the illegality of making false [police] reports" and its protocol for reporting assaults on guards to supervisors immediately. And Smith owed a duty to Black to have a written plan in force about the instigation of any criminal actions against a resident of The Oaks and to adequately supervise Zaffar after knowing that he had claimed that two other guests had allegedly threatened to shoot him.

In regard to retaining Zaffar, "two other companies had asked [Smith] to remove him from their locations" before it placed him at The Oaks and this "alone should have alerted [Smith] that there was something going on with Zaffar." And after Smith learned that Zaffar had previously had two separate confrontations with others at The Oaks and had claimed that the others had threatened to shoot him, Smith should have transferred him to another post or discharged him.

Black further alleged that "any employer should have reasonably foreseen that Zaffar had a problem dealing with people he encountered" and was "making false claims against them." And Smith, by failing to take any action, had encouraged and assisted Zaffar "in the furtherance of his false criminal complaints

4

of assault" and was responsible under the theory of respondeat superior for proximately causing Black's damages.

Smith filed a no-evidence summary-judgment motion, asserting that there is "no evidence that any alleged negligence on [its part] during the hiring of Zaffar proximately caused the harm alleged to have been suffered by [Black]." In regard to Black's claims for negligent training, supervision, and retention, Smith asserted that there is no evidence that it "owed any such duties to [Black]." Rather, it solely owed a duty to the "party that hired it: The Oaks of Woodlake." In a separate summary-judgment motion, Smith asserted that, as a matter of law, it was not vicariously liable for Zaffar's acts of malicious prosecution or wrongful imprisonment.

In his response to Smith's summary-judgment motion on his negligence claims, Black reiterated the arguments that he had presented in his petition. And he attached to his response, as his summary-judgment evidence, Smith's dispatch records; a letter from a resident of The Oaks to The Oaks's management about Zaffar's February 2012 accusation that a guest had threatened to shoot him; an excerpt of the deposition testimony of Ruben Amaya, a Smith representative, about the hiring of Zaffar and Smith's response to the February 2012 incidents; the affidavit testimony of Black and his attorney; and the affidavit testimony and

expert report of J. Patrick Murphy, a Forensic Expert Witness and Security Management Consultant.

The trial court, without specifying the grounds, granted Smith's no-evidence summary-judgment motion on all of Black's negligence claims against it. The trial court also granted Smith's matter-of-law summary-judgment motion on Black's claims that Smith was vicariously liable for Zaffar's acts of malicious prosecution and wrongful imprisonment. After a trial to the court, at which Zaffar did not appear, the trial court found in favor of Black on his claims against Zaffar for malicious prosecution and wrongful imprisonment, awarding him damages against Zaffar in the amount of $49,500. Smith then filed a post-judgment motion for attorney's fees, which the trial court denied.

### Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick*

6

*v. Koch Power, Inc*., 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party has sought summary judgment on both grounds and the trial court's order does not specify its reasons for granting summary judgment, we first review the propriety of the summary judgment under the no-evidence standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* TEX. R. CIV. P. 166a(i). If we conclude that the trial court did not err in granting summary judgment under the no-evidence standard, we need not reach the issue of whether the trial court erred in granting summary judgment as a matter of law. *See Ford Motor Co*., 135 S.W.3d at 600.

To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary-judgment

7

motion may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on each of the challenged elements. *See Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

In a matter-of-law summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no

pet.).  The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Summary Judgment

In his sole issue, Black argues that the trial court erred in granting Smith's no-evidence summary-judgment motion on his negligence claims,[2] because he presented more than a scintilla of evidence on each of the challenged elements of each of his claims, and in granting Smith's matter-of-law summary-judgment motion on his respondeat-superior claims, because Zaffar was acting within the course and scope of his employment as a security guard for Smith when he filed a criminal complaint against Black.

### **Negligence**

Negligent hiring, training, supervision, and retention claims are "all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability."  *See Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.).  As with any negligence case, the plaintiff must prove the existence of a legal duty, a breach of that duty, and damages proximately

---

[2]    Although Black states in his brief that he appeals the trial court's summary judgment, "both traditional and no-evidence, on the issue of negligence," the record shows that Smith moved only for a no-evidence summary judgment on Black's negligence claims.

9

caused as a result of the breach. *Id.*; *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

### *Hiring*

In regard to Black's negligent-hiring claim, Smith, in its summary-judgment motion, asserted that there is "no evidence that any alleged negligence on [its part] during the hiring of Zaffar proximately caused the harm alleged to have been suffered by [Black]."

Although "the supreme court has yet to set out what duty an employer has in negligent hiring . . . claims, it has indicated that to recover on these theories, a plaintiff must show more than just negligent hiring practices." *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 64 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012). "Negligence in hiring requires that the employer's 'failure to investigate, screen, or supervise its [hirees] proximately caused the injuries the plaintiffs allege.'" *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006) (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). The components of proximate cause are cause-in-fact and foreseeability, and these elements may not be established by mere conjecture, guess, or speculation. *See Doe*, 907 S.W.2d at 477. The test for cause-in-fact is whether the negligent act or omission constituted a substantial factor in bringing about injury, without which the harm would not

have occurred. *Thomas v. CNC Invs., L.L.P.*, 234 S.W.3d 111, 124 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Cause-in-fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Id.* And a negligent-hiring claim "requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey*, 379 S.W.3d at 247.

Here, Ruben Amaya, Smith's representative, testified that Smith, in hiring Zaffar, relied solely on Zaffar's application, in which he stated that he had been "working in the profession" for two to three years. In his expert report, J. Patrick Murphy, Smith's security-management consultant, notes that his review of Zaffar's personnel file and Smith's records revealed that Zaffar's employment application contains insufficient and inaccurate dates of employment and "there is no evidence of Smith's checking of Zaffar's prior employment/references." Murphy did not opine as to how such inadequacies relate to any foreseeability of Black's injury. For instance, Murphy does not state what Zaffar's references would have revealed. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 736–37 (Tex. 1998) (employer's background check of employee who committed sexual assault would have revealed prior inappropriate sexual conduct in workplace and conviction for indecency).

Black does not direct us to any summary-judgment evidence establishing that Smith's failure to investigate Zaffar prior to hiring him proximately caused

Black's injury. *Cf. Read*, 990 S.W.2d at 737 (causation element of negligent-hiring claim regarding employee who sexually assaulted third party satisfied by evidence that investigation would have revealed employee's prior sexual misconduct); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 175 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (holding employer negligently hired applicant with "long criminal record" for position of armed security guard).

We conclude that Black did not present any evidence that Zaffar's conduct against him was a foreseeable consequence of Smith's hiring or that Smith's hiring of Zaffar did anything more than furnish a condition that made an injury possible. *See Thomas*, 234 S.W.3d at 124. Accordingly, we hold that the trial court did not err in granting Smith summary judgment on Black's negligent-hiring claim. *See Houser v. Smith*, 968 S.W.2d 542, 545 (Tex. App.—Austin 1998, no pet.) (affirming judgment on negligent-hiring claim where complained-of conduct not foreseeable).

### Training, Supervision, and Retention

In regard to Black's claims against Smith for negligent training, supervision, and retention,[3] Smith asserted that there is no evidence that it owed any duties to

---

[3] Although they tend to overlap, claims of negligent training, supervision, and retention are distinct causes of action. *See Tex. Dep't of Pub. Safety v. Petta,* 44 S.W.3d 575, 581 (Tex. 2001); *Norrell v. Gardendale Volunteer Fire Dep't*, 115 S.W.3d 114, 118 (Tex. App.—San Antonio 2003, no pet.); *see also Najera v.*

12

Black. Smith further asserts that it solely owed a duty to the "party that hired it: The Oaks of Woodlake."

An employer has a duty to adequately train and supervise its employees. *Castillo v. Gared, Inc*., 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). "The basis of responsibility under the doctrine of negligent retention is the master's negligence in retaining in his employ an incompetent servant whom the master knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *CoTemp, Inc. v. Hous. W. Corp*., 222 S.W.3d 487, 492 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Duty is the threshold inquiry of all three claims and is a question of law for the court to decide based upon facts surrounding the occurrence in question. *Phillips*, 801 S.W.2d at 525; *see Dangerfield*, 264 S.W.3d at 912–13 (negligent training); *Knight v. City Streets, L.L.C*., 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (negligent supervision); *CoTemp*, 222 S.W.3d at 492 (negligent retention). In determining whether to impose a duty on a particular defendant, courts weigh: (1) the risk involved; (2) foreseeability of the risk; (3) likelihood of injury; and (4) the social utility of the actor's conduct and the magnitude of the burden on the defendant. *See Phillips*, 801 S.W.2d at 525.

*Recana Sols*., *LLC*, No. 14-14-00332-CV, 2015 WL 4985085, at *7 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.).

Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act created for others. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985). "In the absence of foreseeability, there is no duty." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996).

In *CoTemp*, a customer sued an air conditioning company, CoTemp, for negligent retention after its employee had contracted with the customer to install an air conditioner "on the side" and, after accepting payment from the customer, never completed the work. 222 S.W.3d at 490–91. The evidence showed that the employee had twice previously agreed to perform air-conditioning installation "side jobs." *Id.* at 492. And, in each instance, the employee promised to install equipment and accepted payment, but never completed the work. *Id.* When CoTemp learned of the employee's previous conduct, it reprimanded him and required him to make restitution to the customers. *Id.* However, it retained the employee in the same position, which involved contacting potential and existing customers and obtaining sales. *Id.* at 492–93. The court concluded that this evidence demonstrated that CoTemp, based on the employee's previous dishonest conduct, knew that he was "incompetent or unfit." *Id.* at 493. Thus, its retention of him created a foreseeable risk to other customers, and CoTemp owed its customers a legal duty to protect it from the employee's conduct. *Id.*

Here, Smith's dispatch log from February 11, 2012 reveals that Zaffar had accused a Forward Air employee of threatening him, namely, by stating that he "ha[d] a gun and w[ould] shoot" Zaffar. Zaffar also indicated that he "m[ight] have to call police at shift change." And a February 28, 2012 letter from a resident of The Oaks to The Oaks's management states that Zaffar had falsely reported to law enforcement that her son had threatened to shoot him. Amaya testified that although Zaffar's conduct did suggest a pattern of conduct, he counseled Zaffar after only one of the incidents and did not consider reassigning him or terminating his employment. Murphy opined that Smith should have removed Zaffar from The Oaks "immediately" upon learning of Zaffar's claims that two visitors in a two-week period had threatened to shoot him. He further opined that Smith had failed to adopt proper policies and procedures regarding his conduct.

Thus, the record reveals that prior to filing a police report against Black, Zaffar had twice within the preceding weeks accused guests of having threatened to shoot him. On the second occasion, Zaffar had actually called for law enforcement officers to come to The Oaks to investigate, and the matter was either resolved or dropped without further action by law enforcement. Once Smith learned of these incidents, it counseled Zaffar on one of them, but did not consider reassigning him or terminating his employment. Rather, it retained Zaffar in his position at The Oaks.

Taking all evidence favorable to Black as true and indulging every reasonable inference and resolving all doubts in his favor, we conclude that Black presented more than a scintilla of evidence that Smith's retention of Zaffar created a foreseeable risk to other residents and visitors of The Oaks. *See id.*; *Spradlin*, 100 S.W.3d at 377. Thus, Smith owed Black a legal duty to protect him from Zaffar's conduct. *See CoTemp*, 222 S.W.3d at 493; *cf. Ramirez*, 196 S.W.3d at 797 (certified peace officer fit for security guard position where no conflicting evidence of unfitness prior to incident). Further, because Zaffar's conduct was foreseeable, Smith had a legal duty to train and supervise him. *See Dangerfield*, 264 S.W.3d at 912; *Knight*, 167 S.W.3d at 584.

Accordingly, we hold that the trial court erred in granting Smith summary judgment on Black's claims for negligent training, supervision, and retention.

**Respondeat Superior**

In regard to Black's claims that Smith is vicariously liable for Zaffar's acts of malicious prosecution and wrongful imprisonment,[4] Smith, in its summary-judgment motion, argued that Zaffar was not acting within the course and scope of his employment when he filed a criminal complaint against Black because reporting alleged crimes occurring at The Oaks was not a part of the security

---

[4] As discussed above, the trial court rendered a default judgment in favor of Black on his claims against Zaffar for malicious prosecution and wrongful imprisonment. A default judgment conclusively establishes the defendant's liability. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984).

officers' normal duties; Zaffar did not file his complaint until after he had left work on the day of his altercation with Black; and "Smith did not authorize, benefit from or ratify such conduct."

Under the doctrine of respondeat superior, an employer may be vicariously liable for an employee's tortious act if the "act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *see also Wilson v. Davis*, 305 S.W.3d 57, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.). For an employee's act to be within the scope of his employment, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Goodman*, 80 S.W.3d at 577; *Wilson*, 305 S.W.3d at 67. Generally, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Goodman*, 80 S.W.3d at 577; *Wilson*, 305 S.W.3d at 67.

Smith's summary-judgment evidence includes the affidavit of Ruben Amaya, Smith's Operations Manager; Smith's "Security Officer Post Orders" ("Post Orders") governing The Oaks; the HPD incident report and affidavit of Zaffar; and excerpts from the deposition of HPD Officer Jonathan Liu.

17

Amaya testified that on March 6, 2012, he spoke with Zaffar about his claim that, while he was at his guard post at The Oaks, Black threatened him with a baseball bat. Amaya neither instructed Zaffar to file, nor prohibited him from filing, a criminal complaint against Black. Amaya explained that Smith could not "interfere with an employee's exercise of [his] legal rights in this regard." And Zaffar did not file his complaint until after he had completed his work shift. Amaya noted that even if Zaffar had filed his complaint during his shift, he would have been "pursuing his personal interests, not those of Smith." And Smith "did not authorize, participate in, or ratify such action."

Smith's Post Orders provide that a security officer's purpose at The Oaks is to control gate access and to deter criminal activity. In regard to visitors, the "Security Checks and Procedures" section directs:

> Residents are supposed to inform the management office and courtesy patrol officers of any planned visitors they want to include on the call or no call list maintained in the Gate house. Some residents do not ever want to be called; some residents want to be called always; some residents want to be called always except for the few names they put on the call list. If resident doesn't answer a call ask driver to exit the property.

And Smith generally instructs its security officers, in the event of a "security matter," to note an "Irregularity Report," inform a "Rover," and maintain communications with Smith and The Oaks management. In regard to expressly directing Smith's officers to contact HPD, the Post Orders provide:

> If suspicious characters are observed walking around the property, ask them what unit they live in and to identify themselves. If they are not residents or guests of a resident, inform them they must leave the property and escort them out. If they run, observe where they are going, call HPD.

However, Smith, on the first page of its Post Orders, lists an order of operations with regard to contacting emergency personnel and management. In subsection A of the "Emergency Telephone Numbers and Instructions," Smith provides a telephone number for HPD. It then, in subsection B, directs that The Oaks management personnel be contacted "in the following order: [list]." Then, in subsection C, Smith directs that routine issues pertaining to security matters be directed to the Smith supervisor on duty.

The HPD report states that Zaffar, at 8:00 p.m. on March 6, 2012, came into the HPD substation and filed a complaint. In his complaint, Zaffar stated that at 5:00 p.m. that day, while he was "working the guard shack" for Smith, a person drove her car up to the guard shack and requested access to unit number 619, which Zaffar's list showed to be vacant. A few minutes later, a person telephoned Zaffar, claiming that she lived in unit 619 and directing that the driver be allowed to enter. Zaffar alleged that, during the telephone call, he heard someone in the background say that he was going to "put him down." A few minutes later, Black appeared at the guard shack with a baseball bat and attempted to strike Zaffar. Zaffar closed the door and called HPD for law-enforcement assistance. Black then

yelled through the door that he was "going to kill him" because he was tired of his guests not being allowed to enter the property. After Black left, Zaffar waited for another security officer to relieve him at his post and then drove to an HPD substation to file a report. The HPD report further states that at the time its officers arrived at The Oaks, in response to Zaffar's call for assistance, Zaffar had already left. The excerpt of Officer Lui's deposition adds only that the district attorney made the decision to pursue criminal charges against Black.

In regard to Smith's argument that Zaffar was not acting within the course and scope of his employment in filing a criminal complaint against Black because "[r]eporting alleged crimes occurring at The Oaks was not . . . part of the security officers' normal duties," Smith, in its Post Orders, provides that a security officer's purpose at The Oaks is to control gate access and to deter criminal activity. Smith provides a telephone number for HPD and directs its security officers, under certain circumstances, to contact HPD. Thus, Smith's summary-judgment evidence does not conclusively establish that Zaffar, by reporting criminal activity occurring on The Oaks property to HPD, was acting outside the scope of the authority granted to him by Smith. *See Hopkins v. Strickland*, No. 01-12-00315-CV, 2013 WL 1183302, at *3 (Tex. App.–Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.) (even if defendant wrongly or negligently performed, he acted within general scope of his duties); *Tex. Dep't. of Pub. Safety v. Tanner*,

20

928 S.W.2d 731, 735 (Tex. App.—San Antonio 1996, no writ) ("Even if a specific action is wrong or negligent, an officer acts within the scope of his authority when performing the general duties assigned.").

In regard to Smith's argument that Zaffar was not acting within the course and scope of his employment in filing a criminal complaint against Black because he did so only after he had left work on the day of the incident, the summary-judgment evidence shows that Zaffar, during his work shift, called for law-enforcement assistance in response to the alleged conduct of Black. After, as Zaffar asserts, law-enforcement officers did not respond and Black left, he waited for another security officer to relieve him at his post and then drove to an HPD substation to file a report. The HPD report states that officers did go to The Oaks in response to Zaffar's call for assistance, however, he had already left. The evidence does not conclusively establish that Zaffar, by continuing his attempt to make a police report, whether to preserve his own safety or that of the other security officers as well, and driving to an HPD substation after his shift had ended and another officer had relieved him, was no longer acting in furtherance of Smith's business and was acting outside the scope of his employment.

In regard to Smith's assertion that it "did not authorize, benefit from[,] or ratify" Zaffar's filing of a criminal complaint, an employer may be vicariously liable for an employee's tortious act if the "act falls within the scope of the

employee's general authority." *Goodman*, 80 S.W.3d at 577. "It is not essential that the negligent act or omission should have been expressly authorized by the employer so long as it is in furtherance of the employer's business and for the accomplishment of the object for which the employee is employed." *Leadon v. Kimbrough Bros. Lumber Co*., 484 S.W.2d 567, 569 (Tex. 1972). Smith asserted that it "had nothing to do with the institution of the criminal proceedings against" Black. However, an employer may be vicariously liable for the tortious acts of an employee acting within the scope of his employment, even though the principal or employer did not itself commit a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002).

Although Smith raises additional arguments in its appellate brief, a summary judgment "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist*., 858 S.W.2d 337, 341 (Tex. 1993). "In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence." *Id.*

Taking as true all evidence favorable to Black and indulging every reasonable inference in his favor, we conclude that Smith has not conclusively established, as a matter of law, that Zaffar acted outside the course and scope of his employment as a security guard for Smith. *See Goodman*, 80 S.W.3d at 577; *see*

*also Wilson*, 305 S.W.3d at 67. Accordingly, we hold that the trial court erred in granting Smith summary judgment on Black's respondeat-superior claims.

We sustain Black's sole issue in part and we overrule it in part.

### Attorney's Fees

In its sole cross-point, Smith argues that the trial court erred in denying its request for attorney's fees because it is entitled to recover litigation costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 42.001–.005 (Vernon 2015); TEX. R. CIV. P. 167. When a settlement offer is made and rejected, and the judgment rendered is "significantly less favorable" to the rejecting party than was the settlement offer, the offering party is entitled to recover litigation costs, including attorney's fees, from the rejecting party. TEX. CIV. PRAC. & REM. CODE ANN. § 42.004(a); TEX. R. CIV. P. 167.4(a). A judgment award is "significantly less favorable" than a settlement offer if the judgment awarded is less than 80 percent of the settlement offer. *See* TEX. R. CIV. P. 167.4(b).

Having concluded that Smith was not entitled to summary judgment on certain of Black's claims, the case must be remanded to the trial court for further proceedings. Thus, we do not reach the issue of whether the trial court erred in denying Smith attorney's fees.

## Conclusion

We reverse the judgment of the trial court on Black's negligent-supervision, training, and retention claims and on his respondeat-superior claims. We affirm the judgment of the trial court on Black's negligent-hiring claim. And we remand the case to the trial court for further proceedings consistent with this opinion.

Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.